IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOHN ROBINSON,
      Petitioner,

vs.                                  Case No.:  5:08cv335/SPM/EMT

IKE EICHENLAUB,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This matter is before the court upon a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (Doc. 1).  Respondent has filed a response (Doc. 13).  Although Petitioner was provided an opportunity to file a reply (*see* Doc. 14), he has not done so.

I.      BACKGROUND

      Petitioner is a federal prisoner who was housed at a federal correctional facility in this District when he filed this habeas action (*see* Doc. 1 at 1).  He challenges prison disciplinary action taken against him which resulted in the loss of thirteen (13) days of good conduct time (GCT).

      The following facts are undisputed by the parties.  On January 3, 2008, Incident Report No. 1684374 was filed charging Petitioner with refusing to obey an order of staff and insolence toward staff, violations of Bureau Code 307 and 312, respectively (*see* Doc. 1, attached Incident Report; Doc. 13, Attach. BJB02, Declaration of Bradley J. Breslin ¶ 8).  The incident report alleged the following:

> On Thursday, January 3, 2008, at approximately 3:40 PM, I, R. Honeycutt, Unit Manager was standing in the common area of Apache A Unit and instructed all the inmates to exit their cells and enter the common area for a Town Hall Meeting.  Once the inmates were in the common area, I instructed them to stop talking so they could hear what was going to be put out.  At this time, I observed inmate Robinson, John #76217-004 at the water fountain in the laundry entrance and ordered him to come to the common area so that I could start the meeting.  Inmate Robinson refused by continuing to make a drink at the water fountain.  After the second order to gain

> Inmate Robinsons' [sic] compliance, inmate Robinson looked at me and laughed, continuing to make his drink. Officer Morrell was asked to remove inmate Robinson from the Unit so that I could conduct the meeting without interruption. This is when inmate Robinson became insolent and stated: ["]I'm not going to the hole, F[***] You!["]. Inmate Robinson finally complied with Officer Morrell and was removed from the Unit.

(Doc. 13, Attach. BJB03). Petitioner received a copy of the incident report on January 3, 2008, at 8:45 p.m. (Doc. 13, Attach. BJB02, Breslin Decl. ¶ 10; Attach BJB03). Upon initial investigation and review by the Unit Disciplinary Committee, the charge was referred to the Discipline Hearing Officer (DHO) (Doc. 13, Attach BJB02, Breslin Decl. ¶ 11; Attach BJB03). On January 8, 2008, Petitioner received a Notice of Discipline Hearing Before the DHO (Notice) (Doc. 13, Attach. BJB04). Petitioner indicated on the Notice that he wished to call Correctional Officer Morrell to testify that the allegations in the incident report were false, and Dr. Guzman to testify regarding Petitioner's medical condition (*id.*). Petitioner expressly waived representation by a staff member at the hearing (*id.*). Also on January 8, Petitioner received a notice of his rights, notifying him that he had the right to prior notice of the charge, the right to staff representation at the hearing, the right to call witnesses and present documentary evidence, the right to present a statement in his defense or remain silent, the right to be present at the hearing, the right to be advised of the hearing officer's written decision, and the right to appeal the decision (*id.*).

The disciplinary hearing was conducted by Lt. Gary Bullard on January 24, 2008 (Doc. 13, Attach BJB02, Breslin Decl. ¶ 13; Attach. BJB04). Petitioner expressly waived his right to present testimony from Officer Morrell and Dr. Guzman (Doc. 13, Attach. BJB04). According to the declaration of Lt. Bullard, he considered all the evidence presented at the hearing and decided that the greater weight of the evidence showed that Petitioner committed the infraction (*id.*). The sanctions imposed upon Petitioner included the loss of (thirteen) 13 days of GCT (Doc. 13, Attach BJB02, Breslin Decl. ¶ 16; Attach. BJB04). Lt. Bullard issued a written decision that advised Petitioner of his rights, Lt. Bullard's findings and decision, the specific evidence relied upon by Lt. Bullard, and a brief statement of why sanctions were imposed (Doc. 13, Attach BJB04).

Petitioner claims that the disciplinary infraction was false and discriminatory (Doc. 1 at 3–5). He asserts the allegation that he refused to report to the common area for the meeting is false because he was standing at the water fountain, which is located in the common area (*see id.* at 4). He additionally states that Unit Manager Honeycutt exaggerates facts in incident reports "to enforce

his racial policies" and to harass, punish, and intimidate African American and Latino inmates (*id.* at 3–5). Specifically with regard to the instant disciplinary charges, Petitioner states Honeycutt punished him because he was the only African American in the area, and Honeycutt hates African Americans and Latinos (*id.* at 3).

Respondent asserts that the record establishes that Petitioner received the procedural protections to which he was constitutionally entitled under Wolff v. McDonnell, 418 U.S. 539 (1974) (Doc. 13 at 6–9). Furthermore, there was sufficient evidence to show that Petitioner committed the disciplinary infraction; therefore, substantive due process was satisfied under Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445 (1985) (*id.*)

II.     ANALYSIS

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of due process rights to which a defendant in a criminal proceeding is entitled does not apply. Wolff, 418 U.S. at 563–67. Once prison disciplinary charges are filed, the Supreme Court has outlined that due process requires: (1) written notice of the charges be given to the inmate at least 24 hours before his appearance before the hearing committee, (2) a written statement by the hearing committee citing the evidence relied on and the reasons for the disciplinary action be given to the inmate, and (3) the opportunity for the inmate to call witnesses and present documentary evidence in his defense, so long as institutional safety and correctional goals are not jeopardized. *Id.* There is no constitutional right to confront and cross-examine witnesses. *Id.* at 567–69.

Additionally, in order to satisfy due process, a decision of a prison disciplinary team must be supported by "some evidence" in the record. Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 455, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985); Young v. Jones, 37 F.3d 1457 (11th Cir. 1994); Inglese v. Warden, U.S. Penitentiary, 687 F.2d 362, 363 (11th Cir. 1982). Furthermore, "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455 (emphasis added).

Initially, Petitioner does not allege that he was denied any of the enumerated procedural protections required by Wolff; indeed, as reviewed above, Petitioner was afforded the Wolff

procedural due process safeguards. Additionally, the evidence was sufficient to support the hearing officer's decision. The hearing officer based his decision on the following:

> The DHO finds inmate John Robinson #76216-004, committed the prohibited acts of Code 307, Refusing to Obey an Order of Staff and Code 312, Insolence Toward Staff.

> These finding [sic] are based upon facts stated in section 11 of incident report #1684374. It states, on 01-03-08, at approximately 03:40 PM, in the Apache A Common area, the Reporting Staff Member instructed all inmates to exit their cells and enter the common area for a Town Hall Meeting. Inmate Robinson refused by remaining at the water fountain. A second order was given and again he refused to comply. Officer Morrell was instructed to remove inmate Robinson from the unit. Inmate Robinson became insolent by stating he was not going to the hole and stated "F[***] You", to the Reporting Staff Member.

> The DHO notes inmate Robinson chose not to admit or deny this allegation when questioned by the Investigating Lieutenant as noted in section 24 of the report. The DHO notes inmate Robinson stated he was on medication and had a delayed reaction during his UDC hearing as stated in section 17 of the report. During his DHO hearing, inmate Robinson stated he didn't mean to be insolent. However he denied refusing the order. He offered no information in his defense in the form of witnesses or documentary evidence.

> The DHO considered as evidence staff have a legal obligation to ascertain the facts and present them in a truthful manner. Those facts are inmate Robinson was ordered to come to the Common Area of the Unit to participate in a Town Hall Meeting and Refused [sic]. Secondly he stated "F[***] You", to the Reporting Staff Member which was witnessed by Officer Morrell and substantiated in his memo dated 01-19-08.

> Therefore, based upon the greater weight of evidence which are the direct observations of staff it is the finding of the DHO inmate Robinson #76217-004 committed the prohibited acts. His failure to comply with the Reporting Staff Member's directive supports Code 307. His comments to the Reporting Staff Member were rude, contemptuous and demeaning and support the Code 312 violation.

(Doc. 13, Attach. BJB04at 3; *see also* Doc. 13, Attach. BJB04at 2).

The statement of Unit Manager Honeycutt and Officer Morrell constitute sufficient evidence under <u>Hill</u> to support the disciplinary decision. *See* <u>Hill</u>, 472 U.S. at 456 (prison guard's testimony and copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause); *see also* <u>Hartsfield v.</u>

<u>Nichols</u>, 511 F.3d 826, 831 (8th Cir. 2008) ("[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation . . . "); <u>Hrbek v. Nix</u>, 12 F.3d 777, 781 (8th Cir. 1993) (same). Given the fact that there was "some evidence" upon which the hearing officer could rely, as well as the disciplinary (as distinguished from criminal) nature of the proceedings and sanctions, this court finds there was sufficient evidence upon which to base a finding of Petitioner's guilt of the charges to satisfy due process.

As to Petitioner's claim that the disciplinary charges were motivated by racial discrimination, Petitioner has failed to establish an equal protection violation. The Equal Protection Clause requires the government to treat similarly situated people in a similar manner. <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). To state a claim for an equal protection violation based on the unequal administration or enforcement of neutral statutes and policies, a plaintiff must show 1) that he is similarly situated to others who received different treatment and 2) that the different treatment was motivated by a discriminatory purpose. <u>Strickland v. Alderman</u>, 74 F.3d 260, 264 (11th Cir. 1996); <u>E&T Realty v. Strickland</u>, 830 F.2d 1107, 1112–13 (11th Cir. 1987). Thus, in order to assert a viable equal protection claim, Plaintiff must first make a threshold showing that he was similarly situated in the relevant aspects to those who received more favorable or different treatment. *See, e.g.*, <u>Campbell v. Rainbow City, Ala.</u>, 424 F.3d 1306, 1314–17 (11th Cir. 2006) (rejecting an equal protection claim where developer had not established that other projects were similarly situated in terms of, *inter alia*, proposed use, number of variances sought, procedural status and documentation presented to zoning board); <u>Oliver v. Scott</u>, 276 F.3d 736, 746–47 (5th Cir. 2002) (rejecting equal protection claim where security-related policy treated male and female prisoners differently because male prisoners in a certain prison were more numerous and had been convicted of more violent offenses). "Bare allegations that 'other' applicants, even 'all other' applicants, were treated differently do not state an equal protection claim; a complaint must attempt to show in some fashion that these 'other' applicants were situated similarly to the Plaintiff." <u>GJR Inv., Inc. v. County of Escambia, Fla.</u>, 132 F.3d 1359, 1367–68 (11th Cir. 1998).

Plaintiff must also allege that the offending party acted with the intent to discriminate against him. *See* <u>McClesky v. Kemp</u>, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); <u>Village of Arlington Heights v. Metro. Hous. Dev. Corp.</u>, 429 U.S. 252, 265, 97 S. Ct. 555, 563, 50

L. Ed. 2d 450 (1977); E & T Realty, 830 F.2d at 1113. There must be intentional discrimination: "[m]ere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause." *Id.* at 1114. "'Discriminatory purpose' implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of' its adverse effects upon an identifiable group." *Id.* (quoting Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296, 60 L. Ed. 2d 870 (1979) (omission in original)). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. GJR Inv., 132 F.3d at 1367–68 (finding that allegations that defendants' actions were "arbitrary and capricious in that [they] acted with an improper motive, without reason, or upon a reason that was merely pretextual" were insufficient to state a claim); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987).

In the instant case, Petitioner alleges Unit Manager Honeycutt issued the incident report because Petitioner was the only African American in the area, and Honeycutt hates African Americans and Latinos. In support of his contention, he submitted affidavits from three inmates, all of which essentially state that Honeycutt "single[d] out" Petitioner and placed him in lock-up due to racial bias and hatred (*see* Doc. 1, attached affidavits). However, the allegations of Petitioner and the inmate affiants are conclusory and mere assertions of their personal beliefs that Honeycutt issued the incident report because Petitioner is African American. Without more, this is insufficient to establish an equal protection violation.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 27th day of July 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these findings and recommendations may be filed within ten days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).